Argued and submitted July 17, 1989, affirmed June 20, reconsideration denied
August 22, petition for review denied October 2, 1990 (310 Or 422)

Mary Lou ADAMS,
Sandy Blankenship and Dianne Adams,
*Appellants,*

*v.*

Mary Lou KNOTH,
*Respondent.*

(85-12-138; CA A45473)

794 P2d 796

Michael H. Bloom, Portland, argued the cause for appellants. With him on the briefs was Bloom & Spaulding, Portland.

Deanne L. Darling, West Linn, argued the cause for respondent. With her on the brief was Hutchison, Hammond, Walsh, Herndon & Darling, West Linn.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

In this action for breach of contract and fraud, plaintiffs assign error to the denial of their motion for a directed verdict on defendant's counterclaim for breach of contract, allowance of defendant's motion to amend her pleadings, the allowance of defendant's motion for a directed verdict on plaintiffs' fraud claim and denial of their motions to construe the contract, as well as a number of evidentiary rulings and instructions. We affirm.

In September, 1984, plaintiffs agreed to purchase defendant's business, "Mary Lou's Flowers and Gifts." The earnest money agreement listed personal property that was to be part of the sale, including "non-portable trade fixtures: two walk-in coolers (1 now inoperable)," and the assignment of the lease for the premises. On October 12, 1984, the parties executed a bill of sale, a purchase money security agreement and a non-competition agreement. The sale price was $35,000, with monthly payments of $425 due by the 15th of the month, with a 10-day grace period. The purchase money security agreement provided:

> "The above named buyer (and if more than one, then all buyers jointly and severally), hereinafter sometimes called debtor, hereby purchases from the above named seller, the seller sells to the buyer the following described goods: Business known as Mary Lou's Flowers and Gifts, *including but not limited to lease on premises known as (Unit A) 468 No. State Street, Lake Oswego,* and stock of goods, inventory of gifts, plants, flowers, supplies, containers and misc. shelves, counters, chairs, assumed business name, *as listed in Earnest Money Agreement* dated September 13, 1984, except the four ladderback chairs, which have been deleted." (Emphasis supplied.)

The coolers are not mentioned in the purchase money security agreement, which also included a clause that provided, "If the collateral is * * * attached to real estate, a description of the real estate is (blank)." No description was provided. The coolers were, in fact, built into the leased premises by the landlord, and the lease provided that all fixtures belonged to the landlord. The non-competition agreement executed in connection with the sale provided that defendant would not operate or work in a flower or gift shop in Lake

Oswego or do floral work in her home in excess of $150 per month for a period of five years.

In December, 1985, plaintiffs sued defendant, alleging fraud and breach of contract. The fraud count was based on alleged false statements and promises made by defendant at the time of the sale. Plaintiffs sought $25,000 in damages, the difference between the purchase price of $35,000 and the alleged fair market value of the business at the time of sale, $10,000. In the breach of contract action, plaintiffs alleged that the contract required defendant to supply them with two walk-in coolers, that she had failed to do so and that she had breached the non-competition agreement.

In February, 1986, plaintiffs failed to pay the monthly payment due under the sales agreement. Defendant then declared them in default and demanded the full payment due under the contract. In March, 1986, plaintiffs tendered the February and March payments into Clackamas County Circuit Court and, thereafter, made monthly payments into court, without defendant's consent or knowledge and without a court order. Defendant eventually became aware that the payments were being made into court and, in September, 1986, she agreed to withdraw her demand for the full balance due. She directed plaintiffs to make all future payments to her or to her attorney. Plaintiffs did not, however, comply with those directions. They sent the September and October payments to the court.

In October, defendant moved to obtain the release of all the funds paid into court. Plaintiffs objected to the release, and a hearing was held. The court ordered release of the payments for February, March, April, May and October.[1] In November, 1986, defendant demanded payment of the amount due for June, July, August and September and notified plaintiffs that, if she was not paid, she would accelerate the balance and exercise her right of repossession. Defendant did not

---

[1] At that time, the court had no record of any other payments. During the trial, it was discovered that payments for June through September, 1986, had been made into court and, in August, 1987, after trial, those funds were released to defendant.

receive the payments and, in December, 1986, she filed a counterclaim for breach of contract in plaintiffs' action against her.[2]

The jury returned a verdict for plaintiffs on their breach of contract claim, but awarded no damages. The trial court granted a directed verdict for defendant on plaintiffs' fraud claim, and the jury returned a verdict for defendant on her breach of contract claim and awarded damages of $14,920, plus interest.[3]

■■ Plaintiffs' first assignment of error is that the trial court erred in denying their motion for directed verdict on defendant's counterclaim for breach of contract. A directed verdict is appropriate only when there is a complete absence of proof on an essential issue or when there is no conflict in the evidence and it is susceptible of only one construction. *Holmes v. Oregon Assn. Credit Management*, 52 Or App 551, 559, 628 P2d 1264, *rev den* 291 Or 771 (1981). Defendant alleged in her counterclaim that plaintiffs failed to make payments in the months of June, July, August and September, 1986, failed to cure the breaches after demand for payment and failed to pay the full balance of the purchase price after acceleration. Plaintiffs contend that there is undisputed evidence that the payments were made into court and, therefore, as a matter of law, defendant did not prove a breach of contract claim.

There is conflicting evidence as to whether plaintiffs' payments into court complied with the contract. There was no court order providing that payments be made into court, and defendant did not authorize plaintiffs to make their payments into court. The September letter from defendant specifically instructed plaintiffs to make all future payments, as of September, 1986, to defendant or her attorney. Contrary to defendant's instructions, plaintiffs made the September, October

---

[2] Defendant's counterclaim also alleged that plaintiffs failed to make payments in "November, 1986, through the present." Pursuant to plaintiffs' ORCP 21 motion, the allegation was stricken before trial. Evidence was presented concerning plaintiffs' failure to make those payments and, during trial, defendant moved to amend her pleading to include the allegation again. The trial court allowed the amendment. However, when the motion for directed verdict was considered by the court, the pleadings did not include the allegation. Therefore, in deciding whether the court's denial of the directed verdict was proper, we do not consider the parties' contentions relating to payments due in November and thereafter.

[3] This is the remaining balance due on the contract.

and November payments into court. They also failed to send the missing amounts to defendant, as directed in her November letter.

■ We view the evidence in the light most favorable to defendant and will reverse a denial of a directed verdict only if there was no evidence from which a jury could have found the necessary facts. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). There was evidence from which a jury could have found that plaintiffs breached the contract. The trial court's denial of plaintiffs' motion for directed verdict was proper.

■ ■ Plaintiffs also argue that the trial court erred in granting defendant's motion for directed verdict on their fraud claim. They allege that defendant made false statements about the business, that they relied on those statements and that they were damaged, because those misrepresentations caused them to buy the business for $35,000, at a time when the fair market value of the business was only $10,000. An essential element of a fraud claim is damages. *Gerke v. Burton Enterprises, Inc.*, 80 Or App 714, 720, 723 P2d 1061, *rev den* 302 Or 299 (1986). Plaintiffs failed to present any evidence of the value of the business at the time of sale. They did not testify as to its worth at that time, and they called no experts to testify about that value. *See Gerke v. Burton Enterprises, Inc., supra,* 80 Or App at 720. The evidence that they did submit, such as their tax returns for later years, the value of the inventory or offers that they received in later years and the fact that the business lost money under plaintiffs' ownership, was not evidence of the business's value at the time of the sale. The trial court did not err in granting defendant's motion for directed verdict.

■ Plaintiffs also assign error to the trial court's denial of their pretrial motion requesting the court to declare, as a matter of law, that the language of the contract concerning the walk-in coolers, "non-portable trade fixtures: two walk-in coolers (1 now inoperable)," was not ambiguous and that defendant breached the contract. As a general rule, the construction of a contract is a question of law for the court. However, if the language of the contract is ambiguous, evidence may be admitted as to the parties' intent. The determination of the parties' intent is a question of fact. However, the

initial question of whether a contract is ambiguous is a question for the court. *Mann v. Wetter,* 100 Or App 184, 785 P2d 1064, *rev den* 309 Or 645 (1990). In deciding if the language of a contract is ambiguous, it is proper for the court to consider extrinsic evidence regarding the circumstances under which an agreement was made or to which it relates. ORS 41.740; *Rodway v. Arrow Light Truck Parts,* 96 Or App 232, 236, 772 P2d 1349 (1989). The trial court was entitled to hear the evidence and was not required to decide before trial whether the contract was ambiguous. Therefore, its denial of plaintiffs' pretrial motion was proper.

■    Plaintiffs also filed a pretrial motion requesting the court to declare that the non-competition agreement was ambiguous. The trial court denied the motion, stating that it would not make that finding without evidence, and that if defendant objected when plaintiffs offered their evidence, it would make a ruling then. Plaintiffs assign the court's denial of their motion at that time as error, asserting that they were prejudiced because they could not present their evidence absent a ruling of ambiguity by the court. The court was entitled to hear evidence on the issue, and it did not err in denying the motion. Plaintiffs did not attempt to offer evidence on the issue at trial.

■    Plaintiffs also assign error to the trial court's denial of their objections during trial to testimony by defendant's attorney that, at the time the contract was being negotiated, he told plaintiffs that the two coolers were not included in the sale. Plaintiffs contend that that testimony was inadmissible, because the contract language was not ambiguous and that, therefore, the court improperly allowed the jury to consider evidence of the parties' intent.

Whether the testimony objected to by plaintiffs was properly admitted and considered by the jury depends on whether the court was correct in concluding that the language of the contract concerning the coolers was ambiguous.[4] We

---

[4] The trial court did not directly rule that the agreement was ambiguous. However, it implicitly found the pertinent language of the agreement ambiguous when it denied plaintiffs' objections to the testimony and commented that there was "some need for interpretation."

hold that it was. The sales agreement provides that the property conveyed includes two walk-in coolers and the assignment of the lease of the premises of the flower shop. As discussed above, in determining whether there is an ambiguity, the court may consider extrinsic evidence regarding the circumstances under which the agreement was made. Here, that evidence showed that the lease to which defendant was a party, and that was being assigned to plaintiffs as part of the overall agreement, provided that fixtures, such as the walk-in coolers, were to remain the property of the landlord. In view of that provision, it is unclear what interest in the coolers was being transferred. Arguably, the interest being transferred was only defendant's possessory interest. In any event, in view of the language of the lease, the trial court was correct in determining that there was an ambiguity and in allowing the jury to consider evidence of the parties' intent.

Plaintiffs also assign error to a number of jury instructions given by the court and to its failure to give others. First, they contend that the court should have given this instruction:

> "I instruct you to find the words non-portable trade fixtures: two walk-in coolers (1 now inoperable) are included in the contract between Plaintiffs and Defendant."

This instruction, however, is dependent on plaintiffs' assertion that the contract is not ambiguous. As discussed above, the agreement was ambiguous.

Plaintiffs also argue that the court erred in not giving this instruction:

> "As a matter of law, trade fixtures can be sold apart from the real property where they are located."

They also contend that the court erred in giving this instruction:

> "Fixtures or trade fixtures are items which lose their characteristics as personal property by their incorporation into the real property.
>
> "In deciding if goods are fixtures you may consider the method of their attachment to the real property, [and] the intention of the parties in making that attachment."[5]

---

[5] This is the instruction that the jury heard, although it varies somewhat from the instruction discussed in the briefs.

■ Plaintiffs' requested instruction is not a correct statement of the law, and it was not error for the court to refuse to give it. *Gymnastics USA v. McDougal,* 92 Or App 453, 458, 758 P2d 881, *rev den* 307 Or 77 (1988). In the absence of an agreement to the contrary, trade fixtures generally are removable by the lessee at the expiration of the lease. *State Hwy. Comm. v. Demerest,* 263 Or 590, 605, 503 P2d 682 (1972). Nonetheless, it is not true that trade fixtures are always removable. The parties may agree otherwise. In this case, we have held that the language of the parties' agreement is ambiguous, and so it was necessary to consider the parties' intent in determining whether they intended that the title to the coolers be transferred in the sale. The trial court's instructions to the jury were proper.

■ Plaintiffs also assign error to the trial court's allowance of defendant's motion to amend their pleading to include the allegation that plaintiffs failed to make payments "in November, 1986 through the present." We conclude that the trial court did not abuse its discretion in allowing the amendment, because the pleadings, for all practical purposes, were automatically amended when the issue was raised and tried without any objection. *Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 788 P2d 428 (1990); *Cutsforth v. Kinzua Corp.,* 267 Or 423, 431, 517 P2d 640 (1973).

Plaintiffs' other assignments of error concerning jury instructions are without merit.

Affirmed.