Argued and submitted February 5, affirmed on appeal and on cross-appeal
October 3, 1990

## BIOMASS ONE, L.P.,
Biomass-One Operating Company,
Lee S. Weisel, D. Sam Schelle
and Marc D. Rappaport,
*Plaintiffs,*

*v.*

## S-P CONSTRUCTION,
Pacific Architects and Engineers Incorporated,
Sheldon L. Pollack Corporation,
Norbert W. Pieper, A.I.A., Inc.,
Pacific Architects and Engineers Incorporated,
Pieper A.I.A., Inc.,
Pacific Architects and Engineers International,
Edward A. Shay, Sheldon L. Pollack, E. R. McCollum,
Norbert W. Pieper and Aetna Ins. Co.,
*Defendants,*

## S-P CONSTRUCTION
and Aetna Ins. Co.,
*Third-Party Plaintiffs -
Appellants - Cross-Respondents,*

*v.*

## BULK HANDLING SYSTEMS
and Industrial Indemnity Company,
*Third-Party Defendants -
Respondents - Cross-Appellants,*

## DELTAK CORPORATION;
S.M. Gilbert Co., Inc.;
Continental Insurance Company;
Corrosion Controllers, Inc.;
Fireman's Fund Insurance Company;
Mid-Continent Industrial Services, Inc.;
Employers Insurance Company of Wausau;
Detroit Stoker Co.; Andersen 2000, Inc.;
Hartford Insurance Group;
Beaumont Birch Company; American Ins. Co.;
Duncan Richardson Engineering Company, Inc.,
aka DCR Engineers, Inc.;
David Hartzell, dba International Trade
Management & Associates; Aqua-Con-Permutit;
Protech Consulting Services, Inc.;
Clay Morrison Constructors, Inc.;
Ausland Construction, Inc.;

Beckman Industrial Corporation;
Northwest Controls, Inc.;
North American Pneumatics, Inc.;
BBC Brown Boveri, Inc.;
Insurance Co. of North America
and Rosemount, Inc.,
*Third-Party Defendants.*

(87-1724-J-2; CA A61560)

799 P2d 152

Stephen G. Jamieson, Medford, argued the cause for appellants - cross-respondents. With him on the briefs was W. V. Deatherage, Medford.

John A. Hudson, Eugene, argued the cause and filed the brief for respondents - cross-appellants Bulk Handling Systems.

Howard W. Carsman, Portland, argued the cause for third-party defendant - respondent-cross-appellant Industrial Indemnity Company. With him on the briefs were James T. Yand and Stafford, Frey, Cooper & Stewart, Portland.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

S-P Construction and Aetna Insurance Co. (Aetna) appeal a summary judgment against them on their third party complaint and the award of attorney fees to Industrial Indemnity Company (IIC). Bulk Handling Systems (BHS) and IIC cross-appeal the amount of attorney fees that they were awarded. We affirm on the appeal and on the cross-appeal.

S-P Construction (plaintiff)[1] was employed by Biomass One, L.P. (Biomass One), as the general contractor to construct a power plant. Plaintiff subcontracted with BHS to manufacture and install a fuel handling system for the power plant. IIC issued a surety bond to BHS in connection with the Biomass One project.

Biomass One and others brought an action against plaintiff, Aetna and others alleging that plaintiff had breached its contract for the construction of the power plant. Plaintiff filed a third party claim against BHS and IIC, BHS's surety, alleging that BHS is liable for any of plaintiff's liability to Biomass One for defects in the fuel handling system manufactured and installed by BHS. The trial court granted a summary judgment to BHS and IIC against plaintiff on the ground that the claim against them had not been brought within the time provided in the subcontract. Plaintiff appeals from that judgment. The trial court awarded attorney fees to BHS and IIC; plaintiff also appeals IIC's entitlement to attorney fees. BHS and IIC cross-appeal the amount of attorney fees, claiming that they are entitled to more than the trial court awarded.

■ The trial court granted the summary judgment on the basis of paragraph 23 of the subcontract, which provides, in part:

---

[1] The action involved in this appeal is a third party complaint in an action by Biomass One, L.P., and others against S-P Construction and others. Because none of the original plaintiffs or defendants, other than S-P Construction and Aetna, is a party to this appeal, for purposes of simplicity we will refer to S-P Construction as "plaintiff" and BHS and IIC as "defendants." Aetna joined in the appeal, although it is not named as an adverse party in the cross-appeal. Although none of the parties explain Aetna's presence in this action, it appears from the first amended complaint of Biomass One that Aetna is a surety for S-P Construction. Because Aetna is unrelated to the facts of this case, except in that capacity, reference in this opinion to "plaintiff" will mean S-P Construction.

*"Limitation of Time for Commencement of Claims* - Sub-Contractor hereby agrees that any claim or question arising under the terms of this Contract, whether directly or indirectly, and as to which Sub-Contractor may wish to institute arbitration proceedings pursuant to the provision of this contract shall be barred unless asserted by Sub-Contractor of [*sic*] the commencement of such arbitration proceedings pursuant to the terms of this contract within six months after any inaction the parties do further agree that any claim or cause of action of any kind arising out of or connected with this Contract, directly or indirectly, shall further be barred with respect to the institution of proceedings in a court of law unless asserted by the commencement of an action within one year after any inaction or omission or the occurrence of any matter to which such claim or cause of action relates."

The trial court concluded that that paragraph required plaintiff to bring its action within one year after BHS had ceased performance. Plaintiff argues that the paragraph is a single, unambiguous sentence and that the time limitation for bringing an action applies only to the subcontractor, BHS, not to it as the general contractor. In the alternative, it argues that, if the provision is ambiguous, the intent of the parties is a question of fact that precludes a summary judgment.

■ A contract provision is ambiguous if it "has no definite significance or if it is capable of more than one sensible and reasonable interpretation." *Oakridge Cablevision v. First Interstate Bank,* 65 Or App 640, 646, 673 P2d 532 (1983). A provision is not ambiguous simply because the parties disagree as to its interpretation. *Port of Portland v. Water Quality Insurance Syndicate,* 796 F2d 1188, 1194 (9th Cir 1986).

■ The provision cannot reasonably be interpreted as ambiguous because of a lack of punctuation that is obviously a typographical error.[2] "[P]unctuation or the absence of punctuation will not of itself create ambiguity." *Mattison, Inc. v. W. F. Larson, Inc.,* 529 SW2d 271, 273 (Tex Civ App 1975); *accord American Fruit Purveyors v. Avis Rent-A-Car Systems,*

[2] We do not consider the affidavits submitted by plaintiff, which purportedly state plaintiff's intent with respect to the provision. The language of the contract is unambiguous, and we will not consider evidence of one party's undisclosed intent. *See NW Pac. Indem. v. Junction City Water Dist.,* 295 Or 553, 559, 668 P2d 1206 (1983), *mod. on other grounds* 296 Or 365, 677 P2d 671 (1984).

118 Ga App 840, 165 SE2d 879 (1968). The sentence is readable only if a semicolon is inserted after the phrase "within six months after any inaction" and before "the parties do further agree." Without that punctuation, the sentence is not ambiguous; it just makes no sense. When punctuation is inserted, the sentence is capable of only one sensible and reasonable interpretation: The one year limitation applies to both plaintiff and BHS.

■ Plaintiff next argues that, even if the one year limit applies to it, it filed its third party complaint within that time, because it filed it within a year after Biomass One filed the original complaint in this action. Plaintiff asserts that, because its claim against BHS and IIC is that they are liable for any liability that plaintiff may have to Biomass One, the filing of the Biomass One complaint is the "inaction or omission or the occurrence * * * to which such claim or cause of action relates."[3] Defendants respond that the claim or cause of action is the alleged breach of the subcontract, which occurred, at the latest, in April, 1986. Thus, they argue, the third party complaint, filed in October, 1987, was not timely.

Plaintiff's claim is denominated "breach of contract." It alleges that BHS breached the subcontract in various particulars and that, if plaintiff is held liable to Biomass One for those deficiencies, BHS and IIC are liable to it for those damages. Plaintiff argues that the cause of action relates "directly and solely to the claims and causes of action asserted by Biomass One." The limitation on actions arises from the contract and is governed by the language of the contract. The contract does not measure the time limit from the time that the cause of action accrues; it measures it from the "inaction or omission or the occurrence * * * to which [the] claim or cause of action relates." The occurrence to which this cause of action relates is defendants' performance of the contract. When defendants stopped work on the project, any breach, either because of incomplete performance or inadequate performance, was complete. The one year time limit began to run on that date.[4]

---

[3] BHS argues that plaintiff did not raise this issue in the trial court and, therefore, may not raise it here. BHS is wrong. Plaintiff raised the argument in opposition to the summary judgment motions.

[4] An argument similar to plaintiff's was raised in *Ausplund v. Aetna Indemnity*

Plaintiff also argues, on the basis of *City of Reedsport v. Hubbard et ux.,* 202 Or 370, 274 P2d 248 (1954), that, because any damages that it suffered were contingent and not "discernible" until the filing of the third party complaint, it would have been premature to have brought the action before the Biomass One complaint was filed. The case is inapposite. When the action was brought in *City of Reedsport,* the defendant was not in default under the contract. Therefore, no cause of action yet existed, and the action should have been dismissed as premature. Here, however, the alleged breach occurred before Biomass One brought its action against plaintiff. According to the limitation of action clause in the contract, the time began to run when the breach occurred. Because the action was not brought within one year thereafter, the trial court correctly entered judgment for defendants on the third party complaint.[5]

■ Plaintiff next asserts that the trial court erred in awarding attorney fees to IIC, because there is no statutory or contractual basis for the award. It raises a variety of arguments in support of the assignment of error, not all of which warrant discussion. IIC responds that it is entitled to attorney fees, because its bond incorporates the subcontract between plaintiff and BHS, which provides for attorney fees, and because, under ORS 20.096, it is the prevailing party in an action on a contract.

■ A party is not entitled to an award of attorney fees unless there is a statute or a contract providing for fees. *Lewis*

---

*Co.,* 47 Or 10, 81 P 577, 82 P 12 (1905), in which the contractor's bond contained a provision that "any suits at law or proceedings in equity brought against this bond to recover any claim thereunder must be instituted within six months after the first breach of said contract." The plaintiff owner brought an action against the contractor and Aetna, its surety, alleging in part that, contrary to the contract, the completed house was not delivered free of liens. The court first stated that "[t]he parties to a contract may stipulate that an action for a breach of an agreement must be brought within a certain period, and, if such limitation is reasonable, it will be upheld[.]" 47 Or at 22. (Citations omitted.) The court considered that the plaintiff could not determine the amount of her damage until after foreclosure decrees were entered and that the liens were not foreclosed until more than six months after the first breach occurred. It held that, because Aetna, by its failure to pay for materials, caused the liens to be filed, it had waived the time limitation provided in the bond. In this case, there is no allegation or argument that either BHS or IIC caused the delay that resulted in the action being filed too late. Therefore, the rule stated in *Ausplund* does not apply.

[5] Because of our disposition of this issue, we do not consider IIC's argument that the action against it was not filed within the one year limitation provided in the bond.

*v. Dept. of Rev.,* 294 Or 139, 142, 653 P2d 1265 (1982). The contract between plaintiff and BHS contains this provision:

"If either party becomes involved in litigation arising out of this subcontract or the performance thereof, the court in such litigation, or in a separate suit, shall award attorney fees to the justly entitled party. Unless judgment goes by default, the attorney fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorney fees actually incurred in good faith, regardless of the size of the judgment, it being the intention of the parties to fully compensate for all attorney fees paid or incurred in good faith."

There is no attorney fees provision in IIC's bond.

■■■■ Plaintiff argues that, because IIC is not a party to the subcontract, it is not entitled to rely on the attorney fee provision contained in it. We disagree. The bond refers to "a certain Subcontract Agreement" between plaintiff and BHS, dated March 11, 1985,

"wherein [BHS] has agreed to fully perform and complete the following work:

"FURNISH ALL LABOR, MATERIALS AND EQUIP-MENT TO SUPPLY AND INSTALL THE FUEL HAN-DLING SYSTEM PER S-P CONSTRUCTION PLANS; JOB 1412 S/C 1412-6 CODE 546; LOCATION 2350 AVE. 'G' WHITE CITY, OREGON; OWNER — BIOMASS ONE, 1722 WESTWOOD, LOS ANGELES, CA. 90024."

It further provides that, if BHS "shall faithfully perform the work contracted to be done under said Subcontract, * * * then this obligation shall be void; otherwise it shall remain in full force and effect." When the contract and the description of its subject-matter are sufficient to identify the agreement, and there is no specific limitation on the undertaking, the contract is incorporated into the bond, and the indemnity company is "liable for a breach of any of the terms of the agreement." *Ausplund v. Aetna Indemnity Co., supra,* n 4, 47 Or at 17.[6]

"The obligation of a surety is coextensive with and measured by the promises of the principal to the obligee contained in the

---

[6] We recognize that in *Ausplund v. Aetna Indemnity Co., supra,* n 4, on which we rely, the surety had expressly assumed the obligations of the contract. However, the court did not rely on the assumption of obligations in its determination that the contract was incorporated into the bond.

contract. The surety by the bond only binds itself to the performance of the acts which the principal promises to perform as a part of its contract. Both the bond and the contract are to be construed and considered together in determination of the surety's liability, in instances such as this, where the bond is given for the faithful performance of the contract." *Federal Surety Co. v. Basin Const. Co.*, 91 Mont 114, 5 P2d 775, 778 (1931).

*Accord American Surety Co. v. Lauber,* 22 Ind App 326, 53 NE 793, 795 (1899). Plaintiff argues that IIC cannot recover its attorney fees because it "has no obligation as surety under the bond unless BHS, as principal, fails to faithfully perform its obligations under the subcontract * * *" and there is no evidence that IIC has assumed BHS's performance. That begs the point. Plaintiff alleged that IIC was obligated on the bond because of a breach by its principal, BHS. After a breach by the principal, the surety can either assume the contract and perform it or pay the damages caused by the principal's breach. *See Copeland Sand v. Ins. Co. of N. Amer.,* 40 Or App 831, 834, 596 P2d 623 (1979), *rev'd on other grounds* 288 Or 325, 607 P2d 718 (1980). In either event, the surety's liability is determined by construing the bond and the contract together. The fact that the surety is not liable because the principal is not liable does not change the potential for liability.

A surety can limit its liability to less than the entire construction contract. IIC did not do so here; it provided a bond for the faithful performance of work contracted to be done under the subcontract. Plaintiff does not argue that, by providing assurance of the work to be done under the subcontract as opposed to performance of the contract as a whole, IIC would not have been responsible to pay attorney fees to plaintiff, if plaintiff had prevailed. We do not perceive a difference between assuring faithful performance of the work contracted to be done under the subcontract and assuring performance of the subcontract as a whole.

Plaintiff argues that our result is directly contrary to *Guthrie Investments v. Stanton,* 252 Or 465, 450 P2d 551 (1969). It is not. In *Guthrie,* the defendant was a guarantor of a lease that included a provision for attorney fees. The guarantee was separate from and not conditioned on performance of

the lease. The plaintiff brought an action against the guarantor on the guarantee; it was not an action on the lease. Because the guarantee did not contain a provision for attorney fees, the court affirmed the trial court's denial of fees to the defendant. Here, in contrast, IIC's bond is conditioned on nonperformance by BHS. According to plaintiff's Third Party Complaint,

"Industrial Indemnity Company, as surety on behalf of its principal, Bulk Handling Systems, Inc., executed a surety bond for the benefit of S-P Construction wherein by said bond [IIC] agreed to remedy its principal's default * * *."

Because plaintiff's claim is for breach of contract against BHS and IIC, its surety, *Guthrie* does not apply.

■ Finally, both IIC and BHS cross-appeal from the trial court's award of attorney fees. Their only arguments that merit discussion are that the trial court erroneously awarded only the fees incurred in preparation for the motion for summary judgment rather than for the overall defense of the action and that the court should have awarded all fees incurred "in good faith," regardless of whether they were reasonable.

■ The determination of the amount of attorney fees is within the sound discretion of the trial court. *Miller v. Fernley,* 280 Or 333, 337, 570 P2d 1178 (1977). Defendants filed statements of attorney fees, affidavits, memoranda and supplemental memoranda in support of their requests for fees. Plaintiff filed objections to the requests. The trial court issued this order:

"The court has reviewed the Third-Party Defendants' claims for attorneys fees as a prevailing party on motions for summary judgment as well as having reviewed the objections filed by S-P Construction Co.

"After reviewing the Third-Party Defendants' affidavits in support of their claim for attorneys fees, this court is of the opinion that many of the items requested were unnecessary in pursuing the summary judgment claim, but concedes that this is a complicated case and would take more than is ordinarily necessary to acquire the information necessary to present the motion for summary judgment to the court.

"Considering the amount of time necessary and the complication of litigation the court will award attorneys fees and

> costs to Industrial Indemnity Co. in the amount of $8,000 and will award to Bulk Handling Systems, Inc. attorneys fees and costs in the amount of $10,000."

Defendants conclude that the trial court limited the amount of fees to those related specifically to the motion for summary judgment.

We are not persuaded that the trial court considered only the motion for summary judgment in its determination of fees. Defendants have not shown that the fees awarded are tied only to entries in their attorneys' time records that explicitly relate to that motion. The trial court may well have used the terminology it did to differentiate plaintiff's third party claim and its disposition by summary judgment from all of the other claims in the case. We cannot say that the trial court erroneously limited the fees on that basis.

Defendants also argue that, despite ORCP 68, which allows for an award of "reasonable" attorney fees, the trial court should have awarded all attorney fees that they incurred in good faith, because the attorney fees provision in the subcontract so provides. Whether or not a contract provision can supersede the standard in the rule, defendants cannot prevail. In its summary judgment motion, BHS stated that it was "entitled to reasonable attorney fees incurred * * *." Its statements for attorney fees and affidavits in support indicate a claim for *reasonable* attorney fees. Although BHS raised the good faith argument in the trial court, it did so only in the context of arguing that its own attorney fees were reasonable.

In its summary judgment motion, IIC stated that it was entitled to an award of its costs and attorneys fees incurred "in defense of this matter." However, in attorney Carsman's affidavit, he stated that "$16,163.00 as reasonable attorneys fees * * * were incurred in this matter * * *." Although it responded to plaintiff's objection to the reasonableness of the fees, it did not at any time raise the good faith argument in the trial court.

The trial court awarded attorney fees under ORCP 68, which defines attorney fees as the "reasonable value of legal services related to the prosecution or defense of an action." ORCP 68A(1). Even if defendants' argument were

correct that a contract provision can change the reasonableness standard and that, therefore, the trial court erroneously applied that standard, both parties invited any error by seeking reasonable attorney fees. The trial court's award was within its discretion.

Affirmed on appeal and on cross-appeal.