Argued and submitted March 20, reversed and remanded November 4, reconsideration denied December 30, 1992, petition for review denied January 26, 1993 (315 Or 312)

# NATIONAL CHIROPRACTIC MUTUAL INSURANCE COMPANY,
*Respondent,*

*v.*

Melanie MORGAN,
Tracy Hagen, Connie Christopher
and Frederick Charles Coleman, husband,
*Defendants,*

Pamela Gae COLEMAN,
wife,
*Appellant,*

*and*

Charles S. MEECE, D.C.,
*Respondent.*

(90-CV-0768; CA A69378)

840 P2d 732

G. Jefferson Campbell, Jr., Medford, argued the cause for appellant. With him on the briefs was G. Jefferson Campbell, Jr., P.C., Medford.

Joseph C. Guimond, Salem, argued the cause for respondent National Chiropractic Mutual Insurance Company. With him on the brief was Enfield, Guimond & Brown, Salem.

No appearance by respondent Charles S. Meece, D.C.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

## EDMONDS, J.

In this declaratory judgment action, defendant Pamela Coleman (defendant) appeals from a judgment in plaintiff's favor. We reverse.

In 1990, defendant filed an action against her chiropractor, Dr. Meece, alleging claims for malpractice and reckless infliction of emotional distress arising out of 45 "coccyx adjustments."[1] As a result of the treatments, she allegedly suffered a vaginal infection and nerve damage. The jury awarded her $250,000 damages. Plaintiff, Meece's insurer, filed this action for a declaration of its liability under its policy. Plaintiff and defendant filed cross-motions for summary judgment. Plaintiff argues that its liability is limited to $100,000. Defendant argues that, because Meece's conduct occurred during a number of discrete treatments, plaintiff is liable for the full amount of the judgment and that the aggregate limits of $300,000 are applicable. The trial court found in plaintiff's favor, ruling that the negligent treatment of defendant constituted a "continuing tort" and must be considered as a single "occurrence" under the policy.

Defendant makes multiple assignments of error. However, the resolution of most of them turns on whether the trial court was correct when it construed the policy to limit plaintiff's obligation to $100,000. The policy's declaration page provides limits of liability of "$100,000/$300,000" for "each occurrence/aggregate." It does not provide a limit of liability for "each person." However, the "limits of liability" provision of the policy, which refers to the declarations page, provides:

> "Regardless of the number of (1) insured [sic] under this policy, (2) persons or organizations who sustain injury, or (3) claims made or suits brought on account or [sic] injury, the limit of liability stated in the declaration as applicable to *each person* is the limit of the company's liability for all damages sustained by all persons including any derivative claim of a spouse or parent because of injury sustained by any one person. The limit of liability stated as 'aggregate' is, subject to the above provision respecting each person, the

---

[1] Defendants Morgan, Hagen and Christopher were also Meece's patients. The trial court entered a judgment of dismissal with prejudice as to them. Frederick Coleman is defendant's husband. None of those parties appeals.

total limit of the company's liability for all damages. The aggregate limit applies separately to each consecutive annual period." (Emphasis supplied.)

The issue concerns the meaning of the term "occurrence" in the policy. It could refer to each treatment that defendant underwent, or it could mean the entire course of coccyx adjustments. It is not defined in the policy.

In *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992), the court discussed the methodology for interpreting an undefined term in an insurance policy. No extrinsic evidence had been offered about the meaning of the undefined term. The court said that resolution of the issue turns on a question of law and that the task is to ascertain the intentions of the parties by looking at the term in the context of the policy. 313 Or at 469. Because the insurer has chosen not to define the term, it must accept the common understanding of the term by the ordinary purchasing public in the context of the policy. *Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985). In *Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 103, 585 P2d 657 (1978), the court said:

"[It] is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term."

When two or more interpretations of an insurance term are plausible in the broader context of the policy as a whole, "then the rule of interpretation against the drafter of the language becomes applicable because the ambiguity cannot be permitted to survive. It must be resolved." 313 Or at 470. Here, resort to the policy as a whole does not resolve the ambiguity. When the limits of liability provision of the policy is read with the declarations page, it is apparent that the limit of liability per person is $100,000 for "each occurrence." However, that construction does not resolve the issue of what constitutes an "occurrence" when a patient is undergoing a course of treatment and her injuries are a result of the course of treatment. When the ambiguity cannot be resolved by reference to the context of the policy, the undefined term is construed in favor of the insured and the defendant who stands in the position of the insured. *Hoffman Construction*

*Co. v. Fred S. James & Co., supra,* 313 Or at 470-71. That would mean that the trial court erred when it limited plaintiff's obligation to $100,000, unless the issue is a question of fact.

The dissent says that, when an undefined term in an insurance policy is ambiguous, evidence may properly be admitted to show what the parties intended and that the issue is a question of fact. Although the statement may be correct as a general proposition, it is not applicable in this case. The dissent relies on *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 576 P2d 1244 (1978). In *Timberline,* the plaintiff was a dealer in logging equipment. It sold a tower and a yarder to a logger. As part of the same transaction, it also sold guylines that it had bought from another source to rig the tower. The guylines were defective and caused the tower to collapse. The logger brought an action against the plaintiff for damages to the tower; it called upon its insurer to defend the action. The defendant contended that its policy excluded liability for damages to the tower.

The exclusion clause of the policy provided that it did not apply to "property damage to the Named Insured's products arising out of such products or any part of such products." The issue was whether the policy excluded recovery only for damage to the guylines or also damage to the tower. The court said:

> "As a general rule the construction of a contract including an insurance contract, is a question of law. *May v. Chicago Insurance Co.,* 260 Or 285, 292-94, 490 P2d 150 (1971). The exception to this rule is that if the language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact." 281 Or at 643. (Citation omitted.)

The court concluded that the language of the exclusion clause was not ambiguous and was a question of law. It noted that neither party had attempted to explain the purpose of the exclusion and that there was a reasonable explanation for the exclusion's purpose. Similarly, neither party here offers relevant extrinsic evidence on what was intended by the word "occurrence."

The evidence in the summary judgment record is that, before 1988, plaintiff's policies included a standard declarations page that stated a limit of "per person aggregate" for each policy year. In 1988, plaintiff's automated system changed, and the declaration page was changed to read "each occurrence/aggregate." According to plaintiff's affidavit, the change in the language of the declaration page was not intended to alter the limits of the coverage. Meece's affidavit said that he understood the modification to entitle him to multiple coverage for discrete injuries. He testified:

> "It was never explained by plaintiff or its agents, nor was I ever clear on whether I would be entitled to receive up to the aggregate $300,000 coverage for any person who sustained more than one distinct and compensable type of injury."

The affidavits do not resolve the ambiguity surrounding the term "occurrence." "The law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communication and overt acts." *Kitzke v. Turnidge*, 209 Or 563, 573, 307 P2d 522 (1957). The fact that the term was not explained by plaintiff or its agents does not mean that a particular interpretation was intended. Plaintiff's affidavit asserts only that the change in the declaration page was not intended to change the policy's limits of liability. It relies on the language of the policy itself in support of its position that its liability is limited to $100,000. As we have already said, the policy terms are susceptible to alternative reasonable interpretations. Even if we were to consider extrinsic evidence as suggested by the *dictum* in *Timberline Equip. v. St. Paul Fire and Mar. Ins., supra*, there is no relevant evidence to consider. In the light of the unresolved ambiguity, the policy must be construed against its drafter, and plaintiff's obligation cannot be limited to $100,000.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

The majority suggests that the interpretation of a term in an insurance policy is always a question of law and that, whenever a term is not defined in the policy, the insurer is bound by the common understanding of that term. That is a gross oversimplification of the analytical process developed in a long line of precedents, including the recent cases of *Joseph*

*v. Utah Home Fire Ins. Co.*, 313 Or 323, 328, 835 P2d 885 (1992), and *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992). Those cases indicate that fact issues can arise in the construction of an insurance contract and that an insurer is not bound by the common understanding of a term, unless an ambiguity is not otherwise resolvable. Because that is the case here, I dissent.

An insurance contract must be construed to effectuate the parties' intent. 313 Or at 470. Moreover, because this is a summary judgment proceeding, plaintiff, the moving party, must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978).

The threshold question is whether an ambiguity exists. That is a question of law. *Adams v. Northwest Farm Bureau Ins.*, 40 Or App 159, 164, 594 P2d 1256, *rev den* 287 Or 123 (1979). If the court determines that the contract terms clearly reflect the parties' intentions, *see State Farm Mutual Auto Ins. Co. v. White*, 60 Or App 666, 672, 655 P2d 599 (1982), it is unambiguous and construction is unnecessary. If, on the other hand, the court determines that the contract is ambiguous and evidence that presents a genuine issue of material fact is properly admitted to show meaning, determining what the parties intended is a question of fact. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). The evidence may take the form of information regarding the parties' negotiations, *see Joseph v. Utah Home Fire Ins. Co., supra*, 313 Or at 328; trade usage, *Timberline Equip. v. St. Paul Fire and Mar. Ins., supra*, 281 Or at 643; or any other extrinsic evidence regarding the circumstances under which the agreement was made. *See, e.g., Collins v. Farmers Ins. Co.*, 312 Or 337, 360, 822 P2d 1146 (1991); *Adams v. Knoth*, 102 Or App 238, 243, 794 P2d 796, *rev den* 310 Or 422 (1990).

The declarations page of the policy provides limits of liability of "$100,000/$300,000" for *"each occurrence/* aggregate." (Emphasis supplied.) It does not provide a limit of liability for "each person." However, the "Limits of Liability" provision of the policy, which refers to the declarations page, provides:

"Regardless of the number of (1) insured [sic] under this policy, (2) persons or organizations who sustain injury, or (3) claims made or suits brought on account or [sic] injury, the limit of liability stated in the declaration as applicable to '*each person*' is the limit of the company's liability for all damages sustained by all persons including any derivative claim of a spouse or parent because of injury sustained by any one person. The limit of liability stated as 'aggregate' is, subject to the above provision respecting each person, the total limit of the company's liability for all damages. The aggregate limit applies separately to each consecutive annual period." (Emphasis supplied.)

Because the "each occurrence" limit of liability stated on the declarations page is different from the "each person" limit of liability specified in the body of the policy, the policy is ambiguous. To aid in resolving that ambiguity, the parties submitted affidavits. Plaintiff's affidavit focuses on the circumstances surrounding the execution of the policy. It asserts that, before 1988, the declarations page did provide an "each person" limit but that an automated systems change inadvertently caused the phrase "each occurrence" to be substituted for the phrase "each person" when Meece renewed his policy.[1] Defendant submitted an affidavit from Meece stating that he was unsure about the effect of the change from "each person" to "each occurrence" but that he thought that the change meant that he was "entitled to some form of coverage beyond the scope of that which" he had when the declarations page referred to "each person," because his premium increased.

Defendant's affidavit focuses on Meece's subjective interpretation of the policy. However, "[t]he law of contracts is not concerned with the parties' undisclosed intents and ideas." *Kitzke v. Turnidge*, 209 Or 563, 573, 307 P2d 522 (1957). Consequently, we cannot consider Meece's self-serving assertions. *See Biomass One, L.P. v. S-P Construction*, 103 Or App 521, 525 n 2, 799 P2d 152 (1990).

Because defendant failed to present any competent evidence to rebut plaintiff's assertions concerning the circumstances surrounding the execution of the contract, we

---

[1] The record contains a copy of the previous version of the declaration page issued with Meece's policy, which bears out plaintiff's contention.

must accept those assertions as true. *Poirier v. United Grocers*, 110 Or App 592, 596, 824 P2d 1158, *rev den* 313 Or 210 (1992). That evidence shows that the change in the declarations page was unintended and that the phrase "each occurrence" was intended to read "each person" as that phrase is used in the "Limits of Liability" section of the policy.[2] The terms of that provision clearly limit plaintiff's liability for injury to any one person to $100,000. Accordingly, the court did not err in granting summary judgment for plaintiff.

Even if we did not accept plaintiff's evidence, I would still conclude that the ambiguity can be resolved by interpreting the policy as a whole. If a contract is ambiguous, but there is no genuine issue of material fact, either because the evidence reveals no such issue or because the parties failed to present any competent evidence regarding their intentions, the construction of the contract remains a question of law. To resolve that question, a court must evaluate the plausible interpretations of the contract in the light of "the particular context in which the [ambiguous] term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co. v. Fred S. James & Co., supra*, 313 Or at 470. If the court is able to resolve the ambiguity by that process, it must interpret the contract without resort to any further aids to construction. However, if the court is unable to resolve the ambiguity by that method, it may interpret the contract according to what it perceives to be the understanding of the ordinary purchaser of insurance. *Joseph v. Utah Home Fire Ins. Co., supra*, 313 Or 328; *see also Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 585 P2d 657 (1978). That is just a way of saying that, if the ambiguity remains after reviewing an ambiguous term in context, the term will be construed against the insurer. *See Hoffman Construction Co. v. Fred S. James & Co., supra*, 313 Or at 470.

The "Limits of Liability" provision in the body of the policy refers to an *"each person/*aggregate" limits of the declarations page. (Emphasis supplied.) However, the declarations page only contains an *"each occurrence/*aggregate" limits. (Emphasis supplied.) Because the ambiguity exists between the general language of the declarations page and

---

[2] That contention is bolstered by the fact that the "Limits of Liability" provision refers to a term in the declarations page that does not appear on that page.

the specific language in the "Limits of Liability," the specific language should be viewed as resolving the ambiguity. It is apparent that the "Limits of Liability" provision was intended to fix the rights of the parties and that the declarations page only specifies the amount of coverage, not entitlement to that coverage. That is the only construction that gives effect to all of the provisions of the policy. Consequently, the majority errs by resorting to the rule requiring that we construe insurance policies against the drafter. By resorting to that rule, the majority has read the specific "Limits of Liability" provision out of the policy, solely to give its supposed "ordinary" meaning to a single word. That is hardly a construction of the policy as a whole.

I dissent.