THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAE C. HEIPLE, Defendant-Appellant.

Third District   No. 3—84—0609

Opinion filed June 5, 1985.

Rae C. Heiple, of Peoria, for appellant, *pro se.*

John A. Barra, State's Attorney, of Peoria (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged by means of an Illinois conservation citation and complaint in the circuit court of Peoria County with the offense of operating a watercraft without a personal flotation device aboard in violation of section 4—1 of the Boat Registration and Safety Act (Ill. Rev. Stat. 1983, ch. 95½, par. 314—1). After a bench trial, defendant was found guilty and fined $18 plus $10 costs. This appeal followed.

An agreed statement of facts is contained in the record. With some condensation, it discloses that defendant was operating a windsurfer at a beach location at the Galena Marina on the Illinois River at Peoria. During operation, defendant was not wearing, nor was the windsurfer equipped with, a personal flotation device (PFD).

A windsurfer is both a trade and generic name for an object which essentially consists of a rigid, plastic, foam-filled surfboard to which a fiberglass mast and sail are attached. The mast is not fixed but is secured to a fully pivoting device which allows the operator to turn the sail in a full 360° arc. By standing on the board and manipulating a wishbone attached to the sail, the device can be piloted in much the same manner as a conventional sailboat. In order to change the tack, the operator rotates himself around the front of the mast and repositions the sail.

The windsurfer is 12 feet long, 2 feet wide, and 5 inches thick. The mast supports 65 square feet of sail. If the mast is released by the operator, it drops to the surface of the water, although it remains attached to the board.

The windsurfer is designed principally for one person, although it will support two people. The parties agree that it is a nuisance and

hindrance for an operator to wear a PFD, although one may be attached to some portion of the mast.

At issue are various sections of the Boat Registration and Safety Act (Act). Section 1—1 of the Act states, in part, that "[it] is the policy of this State to promote safety for persons and property in and connected with the use, operation and equipment of vessels and to promote uniformity of laws relating thereto." Ill. Rev. Stat. 1983, ch. 95½, par. 311—1.

Section 1—2 of the Act provides the following definitions:

" 'Vessel' or 'Watercraft' means every description of watercraft, other than a seaplane on the water, used or capable of being used as a means of transportation on water.
*\*\**

'Sailboat' means any watercraft propelled by sail or canvas.
*\*\**

\* \* \*

'Personal flotation device' or 'PFD' means a device that is approved by the Commandant, U.S. Coast Guard, under Part 160 of Title 46 of the Code of Federal Regulations." Ill. Rev. Stat. 1983, ch. 95½, par. 311—2.

Section 4—1 of the Act provides:

"Personal flotation devices. A. It is·unlawful to operate any watercraft less than 16 feet in length or a canoe or kayak unless at least one Coast Guard approved PFD of the following types or their equivalent is on board for each person: Type I, Type II, Type III or Type IV.

B. No person may operate a watercraft 16 feet or more in length unless at.least one Coast Guard approved PFD of the following types or their equivalent is on board for each person: Type I, Type II or Type III.

C. No person may operate a watercraft 16 feet or more in length, except a canoe or kayak, unless at least one Type IV Coast Guard approved PFD or its equivalent is on board in addition to the PFD's required in paragraph B of this Section.

D. When assisting a person on waterskis, aquaplane or similar device, there must be one U.S. Coast Guard approved lifesaving device on board for·each person being assisted or towed.

E. No person may operate a watercraft unless each device required by this Section is:

1. Readily accessible;
2. In serviceable condition;
3. Of the appropriate size for the person for whom it is in-

tended; and

4. Legibly marked with the U.S. Coast Guard approval number.

F. Approved personal flotation devices are defined as follows:

Type I—A Type I personal flotation device is an approved device designed to turn an unconscious person in the water from a face downward position to a vertical or slightly backward position and to have more than 20 pounds of buoyancy.

Type II—A Type II personal flotation device is an approved device designed to turn an unconscious person in the water from a face downward position to a vertical or slightly backward position and to have at least 15½ pounds of buoyancy.

Type III—A Type III personal floatation device is an approved device designed to keep a conscious person in a vertical or slightly backward position and to have at least 15½ pounds of buoyancy.

Type IV—A Type IV personal floatation device is an approved device designed to be thrown to a person in the water and not worn. It is designed to have at least 16½ pounds of buoyancy." Ill. Rev. Stat. 1983, ch. 95½, par. 314—1.

Defendant has raised a number of contentions regarding the statute. However, we need consider only two of them.

■■ He first maintains that the entire statute and its scheme of regulation are unconstitutional, citing and relying upon *People v. Fries* (1969), 42 Ill. 2d 446, 250 N.E.2d 149. In that case the supreme court struck down a statute requiring motorcycle operators or passengers to wear protective headgear. Defendant argues that the same rationale—freedom from governmental interference in essentially personal choices—should apply in the instant case. Undoubtedly there is a well-established school of thought holding with the Jeffersonian theory that whatever government governs least is best. However, in dealing with the predecessor statute to the one involved in the instant case, the supreme court distinguished *Fries* and held it constitutional. (*People v. Roe* (1971), 48 Ill. 2d 380, 270 N.E.2d 27.) The predecessor version was substantially similar to section 4—1 of the Act. The question of the constitutionality of the instant statute has been foreclosed and we are in no position to reopen it.

■ Defendant's second argument is that a windsurfer is not a "vessel" or "watercraft" within the meaning of the Act. With this contention we agree, although not for the same reasons assigned by defendant in his brief.

The definition in the Act has been lifted almost verbatim from the Federal statute, the Federal Boat Safety Act of 1971 (46 U.S.C.S. sec. 1451 *et seq.* (1979)). The definition there given is:

> " 'Vessel' includes every description of watercraft, other than a seaplane on the water, used or capable of being used as a means of transportation on the water." (46 U.S.C.S. sec. 1452(2) (1979).)

We note in passing that this section of the Federal act was repealed effective August 26, 1983, by Public Law 98—89, and a new section (46 U.S.C.S. sec. 2101(45) (19--)) was enacted which provides that the definition of "vessel" shall be that found in 1 U.S.C.S. sec. 3. That section provides:

> "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

The essential meaning appears unchanged.

There has been a plethora of Federal litigation over the meaning of "vessel," especially with reference to the Jones Act (46 U.S.C.S. sec. 688 (1979)). That act created a right of action for injuries or deaths of seamen. The Supreme Court has held that recovery under the Jones Act requires affiliation with a "vessel"—either as a crew member or as one injured aboard doing seaman's work. (*Swanson v. Marra Brothers, Inc.* (1946), 328 U.S. 1, 90 L. Ed. 1045, 66 S. Ct. 869.) Consequently, the Federal courts of appeal have been called upon many times to determine what is a "vessel" within the meaning of the Federal law.

It has been held that everything that floats is not a "vessel." (*Powers v. Bethlehem Steel Corp.* (1st Cir. 1973), 477 F.2d 643, 647 n.4.) In that case, a raft was held not to be a "vessel." Other courts have held *as a matter of law* that certain structures are not "vessels." (*Leonard v. Exxon Corp.* (5th Cir. 1978), 581 F.2d 522; *Cook v. Belden Concrete Products, Inc.* (5th Cir. 1973), 472 F.2d 999.) See also Annot., *When Is Vessel in Navigation for Purposes of Jones Act (46 USC sec. 688)*, 5 A.L.R. Fed. 674 (1970).

Unless a rule of reason is applied, the definition is limited only by one's imagination. One court observed, "No doubt the three men in a tub would also fit within [that definition] *** and one probably could make a convincing case for Jonah inside the whale." (*Burks v. American River Transportation Co.* (5th Cir. 1982), 679 F.2d 69, 75.) To which query we would add: How about a pontoon bridge? Or a log? Or a personal flotation device itself? Seemingly, by dog paddling with one, a person could transport himself.

In our opinion a rule of reason must apply. A windsurfer may be used as a means of transportation on water, but it is not commonly so used. In the same sense, it may be capable of being used as a means of transportation on water, but it is not commonly done. A windsurfer is not a "vessel" or "watercraft" within the definition of the Act as a matter of law. *Powers v. Bethlehem Steel Corp.* (1st Cir. 1973), 477 F.2d 643.

Our opinion is limited to the facts of this case only, a windsurfer. Each object must be judged by itself as other cases arise.

The judgment of the circuit court of Peoria County is therefore reversed.

Reversed.

McCULLOUGH and TRAPP, JJ., concur.