PEOPLE v KING

Docket No. 84372. Submitted March 11, 1986, at Lansing. Decided
    May 19, 1986.
    Irene King, Bruce Gibb, and John Taylor were each charged in
    district court with failure to wear or have ready at hand a
    Coast Guard approved personal flotation device while sailboard-
    ing. .They were each found guilty and fined. The defendants
    appealed to Washtenaw Circuit Court, which affirmed, Edward
    D. Deake, J. Defendants appealed by leave granted. *Held:*
        The Administrative Code rule requiring sailboats to be
    equipped with personal flotation devices does not apply to
    sailboards.                          .
        Reversed and remanded for dismissal.

ADMINISTRATIVE LAW — SAILBOARDS — PERSONAL FLOTATION DEVICES
    — MARINE SAFETY ACT.
    A sailboard is not a vessel within the meaning of the Marine
    Safety Act and therefore is not subject to administrative rules
    for associated equipment on a vessel; thus, it is not necessary
    for a person using a sailboard to wear or have ready at hand a
    personal flotation device (1979 AC, R 281.1248; MCL
    281.1006[g]; MSA 18.1287[6][g]).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William F. Delhey,* Pros-
ecuting Attorney, and *David A. King,* Assistant
Prosecuting Attorney, for the people.

*Mel Laracey,* for defendants.

Before: MacKENZIE, P.J., and ALLEN and G. W.
CROCKETT, III,* JJ.

REFERENCES

Am Jur 2d, Boats and Boating §§ 12, 82.
See the annotations in the ALR3d/4th Quick Index under Safety
    Precautions or Devices.

* Recorder's court judge, sitting on the Court of Appeals by assign-
ment.

MacKenzie, P.J. Defendants were individually charged with failure to wear or have ready at hand a Coast Guard approved personal flotation device (PFD), contrary to 1979 AC, R 281.1248, while sailboarding. They were each convicted after nonjury trials for violation of MCL 281.1166; MSA 18.1287(166), which makes a violation of any rule established in conformity with the Marine Safety Act, MCL 281.1001 et seq.; MSA 18.1287(1) et seq., a misdemeanor. Defendants King and Gibb were both fined $20; King's fine was subsequently suspended. Defendant Taylor was also assessed $20 in fines and costs. Defendants appeal by leave granted from circuit court orders affirming their convictions. The sole issue on appeal is whether 1979 AC, R 281.1248, requiring sailboats to be equipped with PFD's, applies to sailboards. We hold that it does not and reverse.

A sailboard, sometimes also referred to as a windsurfer, is basically a surfboard with a triangular sail on a swivel mounted mast. 46 Fed Reg 42288 (1981). The operator, standing on the board, pilots the device through the trim of the hand-held sail and distribution of body weight on the surfboard. Id. From 1973 to 1981, the federal government preempted the field of sailboard regulation. Since 1981, however, states finding it necessary to do so have been authorized by the federal government to establish and enforce regulations governing the manner in which sailboards are used, operated, or equipped. 46 Fed Reg 42288-42289.

The rule defendants were charged with violating, 1979 AC, R 281.1248, provides in pertinent part as follows:

> A sailboat without a motor and less than 16 feet in length shall be equipped as follows:
> (a) One type I, II, III, or IV coast guard approved

personal flotation device as specified in R 281.1234 in good and serviceable condition for each person aboard. The devices shall be ready at hand and not encased in plastic bags or other containers.

This rule is one of a series promulgated by the Department of Natural Resources in 1975 pursuant to § 18 of the Marine Safety Act, MCL 281.1018; MSA 18.1287(18), regulating "vessels and associated equipment used . . . or carried in vessels." 1979 AC, R 281.1232. The regulations do not define "sailboat" or "vessel" but provide that terms defined in the Marine Safety Act have the same meaning when used in the regulations. 1979 AC, R 281.1231. The act does not define "sailboat" but defines "boat" as a "vessel" used primarily for noncommercial purposes. MCL 281.1006(g); MSA 18.1287(6)(g). The act further defines "vessel" as follows:

"Vessel" means every description of watercraft, other than a seaplane on the water, used or capable of being used as a means of transportation on water. [MCL 281.1006(b); MSA 18.1287(6)(b).]

Thus, to come within the scope of 1979 AC, R 281.1248, a sailboard must meet the above definition of "vessel," i.e., it must be "used or capable of being used as a means of transportation on water."

In *People v Heiple,* 133 Ill App 3d 583; 478 NE2d 1388 (1985), the Appellate Court of Illinois was faced with an issue almost identical to that presently before us. In *Heiple,* the defendant was cited for sailboarding without a PFD aboard pursuant to a section of the Illinois Boat Registration and Safety Act making it "unlawful to operate any watercraft less than 16 feet in length . . . unless at least one Coast Guard approved PFD . . . is on board for each person . . . ." Under the Illinois

act, the terms "watercraft" and "vessel" are used interchangeably. Both are given a definition identical to Michigan's above-quoted definition of "vessel." After considering the definition, the *Heiple* court held that a sailboard is not a "vessel" or "watercraft" within the meaning of the Illinois act, so that an operator need not wear or have attached to the sailboard a PFD. In reaching this conclusion, the court stated:

> It has been held that everything that floats is not a "vessel." (*Powers v Bethlehem Steel Corp* (1st Cir 1973), 477 F2d 643, 647, n 4.) In that case a raft was held not to be a "vessel". Other courts have held *as a matter of law* that certain structures are not "vessels." (*Leonard v Exxon Corp* (5th Cir 1978), 581 F2d 522; *Cook v Belden Concrete Products, Inc,* (5th Cir 1973), 472 F2d 999.) See also Annot., *When Is Vessel in Navigation for Purposes of Jones Act* (46 USC § 688), (1970), 5 ALR Fed 674.
>
> Unless a rule of reason is applied, the definition is limited only by one's imagination. One court observed, "No doubt the three men in a tub would also fit within [that definition] . . . and one probably could make a convincing case for Jonah inside the whale." (*Burks v American River Transportation Co* [5th Cir 1982], 679 F2d 69, 75.) To which query we would add: How about a pontoon bridge? Or a log? Or a personal flotation device itself? Seemingly, by dog paddling with one, a person could transport himself.
>
> In our opinion a rule of reason must apply. A windsurfer may be used as a means of transportation on water, but it is not commonly so used. In the same sense, it may be capable of being used as a means of transportation on water, but it is not commonly done. A windsurfer is not a "vessel" or "watercraft" within the definition of the Act as a matter of law. *Powers.* [478 NE2d 1390-1391. Emphasis in original.]

Similarly, the U. S. Coast Guard has commented that "[t]hrough the use of many thousand sailboards by both experienced and inexperienced sailboarders, it has become apparent that sailboarding has become a sport, similar to surfing or skiing and that sailboards are not normally being used as a means for transportation." 46 Fed Reg 42289. Thus, the Coast Guard has decided for regulatory purposes to treat sailboards in a manner similar to water sport items such as inner tubes, inflatable air mattresses, float boards, and surfboards rather than "vessels" subject to regulation under the Federal Boat Safety Act of 1971, 46 USC 1451 *et seq. Id.*

We find the reasoning of the *Heiple* court and the Coast Guard compelling and adopt it as our own. Although a sailboard is "capable of being used as a means of transportation on water" in the broadest sense of that phrase and hence meets the definition of "vessel" in the act, we too apply a rule of reason and conclude that a sailboard is not a "vessel" and not subject to the present administrative rules for associated equipment on a "vessel."

We recognize that the Marine Safety Act was enacted to promote the safe use of Michigan's waters. We assume that the purpose of 1979 AC, R 281.1248 is to protect persons on board a sailboat against loss of life through drowning. We do not believe that our holding in this case runs afoul of these purposes. A sailboard is clearly different in nature from a sailboat and lacks the characteristics of a sailboat which create the safety hazard that the PFD required by the rule was intended to remedy. Unlike a sailboat, a sailboard cannot sail away when its operator falls off. Further, because the board itself is filled with a closed cell foam, it cannot sink even if broken apart. In fact, a sail-

board itself functions as a PFD. See 45 Fed Reg 47877 (1980); see also 33 CFR § 175.23 (1984). Moreover, sailboarding is a water sport, such as surfing or waterskiing, in which the operator is generally prepared to be in the water. 45 Fed Reg 47877. As a practical matter, there is no place on a sailboard to secure a PFD "ready at hand". If the sailboarder must wear a PFD, a greater safety hazard could result. *Id.* A sailboard's mast is not supported by stays and will drop in the water when released. Sailboarders maintain that, in the surf, wearing a PFD would likely prevent a fallen sailboarder from being able to dive below the surface to escape being battered by his falling equipment. *Id.* Given these unique characteristics of sailboards, in our opinion the overall purpose of the Marine Safety Act and the equipment rules promulgated pursuant thereto would not be enhanced by interpreting "sailboat" to include sailboards.

In light of our holding that 1979 AC, R 281.1248 does not apply to sailboards, we do not reach the merits of defendants' alternative argument, that the rule was not promulgated pursuant to the Administrative Procedures Act, MCL 24.210 *et seq.;* MSA 3.560(101) *et seq.,* to include sailboards due to federal preemption.

Reversed and remanded for dismissal. No costs, a public question involved.