Argued and submitted April 5, affirmed November 13, 1996

# Stephen L. SMITH,
## *Appellant,*

*v.*

# STATE FARM INSURANCE,
## *Defendant,*

## *and*

# STATE FARM FIRE & CASUALTY CO.,
## *Respondent.*

## (94C-816435; CA A88964)

927 P2d 111

Jeffrey F. Renshaw argued the cause for appellant. With him on the brief was McKeown & Brindle, P.C.

Carl R. Rodrigues argued the cause for respondent. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Before Deits, Presiding Judge, and De Muniz and Armstrong, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff brought this action against defendant for breach of an insurance contract. After a trial to the court, it denied plaintiff's claim, and plaintiff now appeals. The issue is whether the theft of plaintiff's sailboards is excluded from coverage under the terms of his homeowners insurance policy. We affirm.

In 1993, plaintiff's car was stolen from a shopping mall parking lot. The car contained several items of personal property, including three sailboards and sailboard equipment. The car was recovered, but the personal property was not. At the time of the theft, plaintiff held a homeowners insurance policy with defendant. The policy insured plaintiff against a wide range of losses, including theft of personal property. Plaintiff submitted his claim to defendant for the theft of his personal property, and defendant paid a portion of the claim. However, it denied coverage for the sailboards and equipment. The basis for defendant's denial is a section of the policy that excludes coverage for:

"loss caused by theft that occurs away from the residence premises of:

"* * * * *

"(2)    watercraft of all types, including their furnishings, equipment and outboard motors[.]"

Plaintiff then brought this action. At trial, the parties focused on the definition of "watercraft" and whether sailboards fall within that definition.[1] The trial court held

---

[1] The parties' dispute centers around the meaning of "watercraft," as used in the theft exclusion. However, "watercraft" is also used in three other places. First, the policy's definition section provides:

"4. * * *

"Under Section II, 'insured' also means:

"c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**[.]" (Boldface in original.)

Second, under Section I, Coverage B (person property), the policy limits lability under certain circumstances:

that, although "watercraft" is ambiguous, the term means anything used or "capable of being used for transportation" on water. The court then concluded that sailboards fit within that definition because they are used and capable of being used for transportation on water. The trial court also based its conclusion on its factual finding that plaintiff was aware that sailboards would be treated as "watercraft" under the policy.[2]

Plaintiff argues that the trial court erred because the term "watercraft" is ambiguous and should be construed against the insurer. Defendant emphasizes that the exclusion refers to "watercraft of all types" and argues that the language is not ambiguous.

■ The determination of whether plaintiff's sailboards are "watercraft," for purposes of insurance coverage, involves a two-step inquiry. First, because "watercraft" is not defined in the policy, the court must, as a matter of law, determine the meaning of that policy term in accordance with the principles enumerated in *Hoffman Construction Co. v. Fred S.*

---

"**Special Limits of liability**.

"\* \* \* \* \*

"d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment[.]" (Boldface in original.)

Third, under Section II (exclusions to liability insurance), the policy excludes coverage for:

"e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

"\* \* \* \* \*

"(3) a watercraft:

"\* \* \* \* \*

"(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion." (Boldface in original.)

Because nothing in the context of the policy suggests otherwise, we presume that "watercraft" has the same meaning in all of the four places in which it is used. *Schweigert v. Beneficial Life Ins. Co.*, 204 Or 294, 303, 282 P2d 621 (1955).

[2] It appears that the trial court may have rested its decision, in part, on extrinsic evidence of plaintiff's intent. However, undisclosed intent and ideas may not be used to resolve an ambiguity surrounding an insurance policy term. *National Chiropractic Mutual Ins. Co. v. Morgan*, 116 Or App 196, 201, 840 P2d 732 (1992). Instead, we must look only to the parties' communication and overt acts. *Id.* Because we base our decision on other grounds, we need not address whether the trial court properly considered plaintiff's intent.

*James & Co.*, 313 Or 464, 836 P2d 703 (1992). Second, if there are disputes of material facts as to whether the particular circumstances or "historic facts" fall within the scope of the court's matter of law definition, the trier of fact must resolve those disputes. *Botts v. Hartford Acc. & Indem. Co.*, 284 Or 95, 585 P2d 657 (1978).[3]

Here, the court, as trier of fact, made findings of fact regarding the characteristics and uses of plaintiff's sailboards; plaintiff does not dispute those findings. Rather, he assigns error only to the trial court's legal conclusions concerning the definition of "watercraft" and the inclusion of sailboards within that definition as a general rule. We therefore address only the definition of "watercraft" and the question of whether sailboards fit within that definition as a matter of law.

■■ "The primary and governing rule in the construction of insurance contracts is to ascertain the intent of the parties" based on the terms and conditions of the policy. *Totten v. New York Life Ins. Co.*, 298 Or 765, 770-71, 696 P2d 1082 (1985); *see also* ORS 742.043. We interpret those terms and conditions according to what we perceive would be the understanding of the ordinary insurance purchaser. *Id.* at 771. When interpreting an insurance policy, we first look to the policy for definitions of its terms. *Hoffman*, 313 Or at 469. If a crucial term is not defined in the policy, we consider its plain meaning. *Id.* If the term has more than one plausible meaning, the next step is to determine whether a proposed interpretation continues to be reasonable in light of the particular context in which the term is used in the policy and in

---

[3] In *Botts*, the court described the respective roles of judge and "jury" (trier of fact) in determining coverage:

"Whether the decision is for judge or jury follows the familiar pattern. In situations in which 'accident' or 'accidental' are not defined in the policy, it is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what we believe to be the popular non-technical understanding of the term. If the evidence discloses that no reasonable jury could find that a view of the facts most favorable to plaintiff is within the definition established by the court, a verdict should be directed by the court for the defendant. If the undisputed facts clearly come within the definition, a judgment should be directed for plaintiff. If the facts are disputed, or if varying legitimate inferences can be drawn from established facts, the question is one for the jury." 284 Or at 103-04.

the context of the policy as a whole. *Id.* at 470. Finally, if, after such an evaluation, two or more interpretations remain reasonable, then the term is legally ambiguous, and we construe it against the insurer, the drafter of the language. *Id.* at 470-71.

■     Because the policy does not define "watercraft," we turn to the dictionary, which defines watercraft as "[a] boat, ship * * *: equipment for water transport: vessels[.]" *Webster's Third New International Dictionary* 2582 (unabridged ed 1993). Sailboards are "equipment for water transport" because their sole purpose is to move people around on the water. Therefore, sailboards could fall within a broad meaning of "watercraft." Plaintiff, however, urges a narrow meaning that excludes sailboards. Under his interpretation, "watercraft" includes only traditional boats and ships, not "water toys" used solely for recreational purposes.

Plaintiff's interpretation fails because the policy excludes not simply "watercraft," but "watercraft *of all types,* including their furnishings, equipment and outboard motors." The phrase "of all types" indicates that the parties intended that the exclusion be given a broad meaning rather than the narrow meaning plaintiff proposes. *See Totten,* 298 Or at 771-72 (parties intended broad meaning where policy referred to "*any* aircraft"). Contrary to plaintiff's assertion, the reference to "furnishings, equipment and outboard motors" does not narrow the meaning to include more traditional "watercraft" but instead broadens the exclusion further to generally include anything attached to "watercraft."

Plaintiff also contends that "watercraft" is ambiguous because it is the subject of conflicting case law. To demonstrate this conflict, he cites *South Beach Marina, Inc. v. Dept. of Rev.,* 301 Or 524, 724 P2d 788 (1986); *People v. Heiple,* 133 Ill App 3d 583, 478 NE2d 1388 (1985); *People v. King,* 151 Mich App 723, 391 NW2d 462 (1986); and Francis M. Dougherty, Annotation, *Construction and Effect of Provision of Homeowner's, Premises, or Personal Liability Insurance Policy Covering or Excluding Watercraft,* 26 ALR 4th 967 (1983 & Supp 1995). Although conflicting case law can be evidence of ambiguity, it is not necessarily conclusive. *I-L*

*Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 316-17, 273 P2d 212, 275 P2d 226 (1954).

In *South Beach*, the court held that "watercraft," as used in a property tax exemption statute, included recreational boats. The courts in *Heiple* and *King* held that "watercraft," as used in a boating safety statute, did not include sailboards and, consequently, sailboard operators were not required to wear personal flotation devices. The holdings of those cases do not conflict. Also, they do not involve the interpretation of an insurance policy. Instead, they involve statutory interpretations that do not control the interpretation of insurance contract provisions. *Totten*, 298 Or at 769-70.

Although the annotation cited by plaintiff does describe cases interpreting insurance policy exclusions,[4] those cases interpret "watercraft" based on the particular facts involved and do not concern either sailboards or policy wording similar to what we address here. In addition, we note that none of the cases held that the term "watercraft" was ambiguous.

The term "watercraft of all types" unambiguously includes sailboards. The trial court did not err in concluding that plaintiff's loss is excluded under the policy.

Affirmed.

---

[4] *Ison v. Roof*, 698 F2d 294 (6th Cir), *cert den* 461 US 957 (1983) (sunken barge was not "watercraft" within context of the policy); *Price v. Zim Israel Navigation Co. Ltd.*, 616 F2d 422 (9th Cir 1980) (cargo "vessel" not "watercraft" within context of policy); *Snyder v. Travelers Insurance Company*, 251 F Supp 76 (D Md 1966) (floating crane was a species of "watercraft"); *Soil Mechanics Corp. v. Empire Mut. Ins. Co.*, 285 NYS2d 391 (1967), *aff'd* 297 NYS2d 1020, 245 NE2d 728 (1969) (raft used to mount soil boring equipment was not "water craft").