Argued and submitted November 18, 2008, at Glencoe High School, Hillsboro, affirmed April 22, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PETER DIRK LAMBERT,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0513468; A132092

206 P3d 1065

Michael A. Breiling argued the cause and filed the brief for appellant.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Barron, Judge pro tempore.*

BARRON, J. pro tempore.

---

\* Barron, J. pro tempore, *vice* Sercombe, J.

### BARRON, J. pro tempore

Defendant was convicted of boating under the influence of intoxicants, ORS 830.325, after a trial to the court. He appeals, seeking a reversal of his conviction. He contends that the raft in which he was floating was not a boat within the meaning of the statute and that, even if it was a boat, there was not sufficient evidence to show that he operated it or was in actual physical control of it, as required by the statute. We review defendant's statutory construction contention for errors of law. *State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042 (1999). In reviewing his sufficiency of the evidence contention, we consider whether, viewing the evidence in the light most favorable to the state, the factfinder could have found that each element of the crime was established beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We reject both of defendant's contentions and affirm.

The facts are simple and not in dispute. Only one witness was called at trial, Clackamas County Deputy Sheriff Wurpes. He testified that, at about 8:00 p.m. on September 8, 2005, he received a call that described a boater in distress on the Clackamas River. Wurpes went to a driveway on Simple Road, near the Clackamas River, where he made contact with defendant. Defendant was wet and near a partially deflated raft. Defendant told Wurpes that he was wet because he had been in the river and had tried to travel to Carver Park from a place up stream. Defendant and the state stipulated at trial that defendant was under the influence of an intoxicant when he was on the river.

Wurpes testified that defendant's raft was approximately five feet in length when inflated and was oblong with sides and a bottom. It was designed for one or two people. It had neither a rope around the edge nor oar locks. There were no oars or paddles present when Wurpes made contact with defendant. Wurpes described the watercraft as a raft, as opposed to "an inner tube or air mattress or anything else," and testified that it could be used to go from one point to another point on the river. He further testified that the raft could be steered with paddles or oars or by hands or feet. A raft is usually launched by dragging or pushing it into the

river or off a trailer. Wurpes guessed that the raft's value was $25. The raft was placed in a plastic bag after it was fully deflated at the scene.

Wurpes testified that the Clackamas River between Carver Park, defendant's intended destination, and the nearest park upstream, is fairly fast moving, with bends and curves, including some sharp 90-degree turns. In September, the river is shallow in some places and a raft that is not steered in some fashion will, in all likelihood, run into a wall or the shore or become stuck on a gravel bar.

■ We first address defendant's contention that his raft was not a boat, within the meaning of ORS 830.325(1). That statute provides:

"No person under the influence of an intoxicating liquor or controlled substance shall operate, propel or be in actual physical control of any boat on any waters of this state."

For purposes of ORS 830.325, "boat," "operate," and "waters of this state" are defined in ORS 830.005 as follows:

"As used in this chapter, unless the context requires otherwise:

"* * * * *

"(2) 'Boat' means every description of watercraft, including a seaplane on the water and not in flight, used or capable of being used as a means of transportation on the water, but does not include boathouses, floating homes, air mattresses, beach and water toys or single inner tubes.

"* * * * *

"(8) 'Operate' means to navigate or otherwise use a boat.

"* * * * *

"(13) 'Waters of this state' means all waters within the territorial limits of this state * * *."

Defendant makes three arguments in his first assignment of error, in which he contends that his raft was not a "boat," as defined in ORS 830.005(2). First, he proposes that the court establish a bright-line definition that will clearly distinguish between a "boat" and a "water toy" or "air

mattress." Second, he contends that, under Oregon law, ORS 830.705, certain "boats" are required to have licenses and registration numbers, and because the Oregon Marine Board does not require registration for the type of raft that defendant used, it was not a "boat." Third, he argues that the raft was not a boat because it was not a "means of transportation," as it had no "steering and no propulsion." The state counters that the bright-line test advocated by defendant would add language to ORS 830.005(2), that the raft did not need a registration number to be a boat, and that the raft was "capable of being used as a means of transportation," even if defendant did not use it for that purpose.

 Defendant's arguments present a question of statutory construction. In construing a statute, the court must determine the legislature's intent, and it does that by first considering the text of the statute in its context, which is the best evidence of intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The court may, at the first level, consider rules of construction in reading the text, such as not inserting or omitting language in the statute and giving common words of usage their ordinary meaning. *Id.* at 611. The context of the statute includes other provisions of the same statute and related statutes. In considering the context of the statute, rules of construction may be employed. For example, the use of the same word or phrase throughout the statute demonstrates that the word has the same meaning throughout the statute. *Id.* If the first level of analysis does not allow the court to determine the meaning of the statute, the court then moves to the legislative history. If looking at the legislative history does not resolve the issue, the court then turns to maxims of statutory construction. *Id.* at 611-12. We conclude that the intent of the legislature with respect to whether defendant's raft was a boat can be determined at the first level of analysis.

Our starting point is the statutory definition of "boat," which is "every description of watercraft * * * used or capable of being used as a means of transportation on the water." ORS 830.005(2). "Watercraft" is not defined in the statute; however, the term is not ambiguous. *See Smith v. State Farm Insurance*, 144 Or App 442, 448, 927 P2d 111 (1996). The dictionary definition of "watercraft" is a "SHIP,

BOAT b : equipment for water transport : VESSELS." *Webster's Third New Int'l Dictionary* 2582 (unabridged ed 2002). The word "every" is defined as "being each individual or part of a class or group whether definite or indefinite in number without exception." *Id.* at 788. "Every" means "all." *See Rash v. McKinstry Co.*, 331 Or 665, 672, 20 P3d 197 (2001) (plain and unambiguous meaning of the word "all" is "every"). Thus, it is clear that, in defining "boat," the statute expressed a broadly inclusive meaning. *See Smith*, 144 Or App at 447. The definition encompasses every form of watercraft that is capable of being used for water transportation.

However, the statute also excludes certain things: "boathouses, floating homes, air mattresses, beach and water toys [and] single inner tubes" are not "boats." ORS 830.005(2). Inflatable rafts are not among those things explicitly excluded.[1] Defendant concedes that his raft is not a "single inner tube," and it is obvious that it is not a "boathouse" or a "floating home." He contends, however, that his raft was more like an air mattress or a water toy than a boat. The terms "air mattress" and "water toy" are not defined in ORS chapter 830. We therefore turn to the dictionary for assistance. One definition of "mattress" is "an inflatable airtight sack adapted to serve as a mattress when inflated and to collapse into a small space (as for packing) when not in use." *Webster's* at 1394. Based on the officer's description, defendant's raft clearly was not an air mattress, as it is commonly understood.

A "toy" is "something designed for amusement or diversion rather than practical use." *Id.* at 2419. Defendant contends that his raft would commonly be recognized as and is indistinguishable from a "toy." He identifies what he considers to be a problem in the statute's failure to adequately distinguish between inflatable watercraft that are boats and

---

[1] If the legislature had wanted to expand the scope of the specific list of things that are not boats, it could have used text similar to ORS 830.365(1), which provides that "[n]o person shall ride or manipulate any water skis, surfboard or *similar device* in a reckless or negligent manner so as to endanger any person or property." (Emphasis added.) It did not do so. *See Royal Aloha Partners v. Real Estate Div.*, 59 Or App 564, 568, 651 P2d 1350 (1982) (inclusion of language in one statute and not another usually indicates intent to exclude related matters not mentioned).

those that are "toys." He proposes a bright-line solution by drawing a clear distinction between "boats" and "toys":

> "Boats have at least one rigid, non-inflatable portion and a steering or propulsion method. Water toys are completely inflatable, have no rigid structures, and have no method of propulsion or steering."

Defendant contends that, under his proposed definition, his raft was a "toy," because it was fully inflatable and lacked a rigid structure, steering, or propulsion.[2] The difficulty with defendant's proposed solution is that the legislature has not chosen to define a "boat" as suggested by defendant; if the court were to do so, it would violate ORS 174.010, which mandates that, "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." Defendant's proposal would require exactly what ORS 174.010 prohibits, and is more properly directed to the legislature. In any event, Wurpes's testimony that defendant's raft had some practical use—it was "the sort of thing that you could use to get from Point A in the river to Point B down river"—supports the trial court's implicit determination that the raft was not a toy.

Defendant further asserts that his raft was not a boat because, without a method of steering or propulsion, it could not be "a means of transportation" as required by ORS 830.005(2). "Transportation" is defined as a "means of conveyance or travel from one place to another," *Webster's* at 2430, and to "convey" means "to bear from one place to another : CARRY, TRANSPORT," *id.* at 499. From those definitions, defendant contends that a means of transportation implicitly must be capable of deliberate direction from one place to another. He argues that, because a person cannot

---

[2] Defendant attached appendices to his brief including five copies of photographs depicting different types of small watercraft. He asks the court to consider the photographs regarding his argument that the raft he was in is the same as an "air mattress" or "water toy." We will not consider the photographs submitted, because they were not in the record before the trial court. *In re Harris*, 334 Or 353, 357, 49 P3d 778 (2002) (material regarding addictions generally and concerning the accused's addiction in particular that were not presented to trial panel stricken from appellate record because "accused had ample opportunity to present the material contained in the briefs to the trial panel but failed to do so in a timely manner").

deliberately go from one place to another in a raft that has no method of steering, a raft is not "a means of transportation." ORS 830.005(2). Once again, the legislature's definition of "boat" does not include defendant's suggested requirement. Putting that issue aside, however, the statute states only that the watercraft must be "capable of being used as a means of transportation." ORS 830.005(2). The evidence at trial supports the trial court's conclusion that defendant's raft was "capable of being used as a means of transportation."

Defendant argues that his raft was not a boat because it did not have a registration number, as required by ORS 830.770. That statute provides, in part:

"(1) No person shall operate a boat on the waters of this state * * * unless:

"(a) The owner of the boat holds a valid, effective certificate of number issued in the owner's name as owner:

"(A) By this state * * *[.]"

With one minor exception not relevant here, ORS 830.700(1) defines "boat" for purposes of ORS 830.770 in the same manner as ORS 830.005(2). ORS 830.705(1)(e) states that "[t]his section and ORS * * * 830.770 * * * do not apply to: * * * [a] boat belonging to a class of boats which has been exempted from the provisions of this section and ORS * * * 830.770 * * * by the State Marine Board." Defendant argues that, because there is no evidence that the State Marine Board has applied registration requirements to inflatable rafts like his, the State Marine Board must have determined that they are not boats.

The state points out that not all "boats" are subject to registration. ORS 830.705(2) provides, in part:

"This section and ORS * * * 830.770 * * * do apply to all boats other than boats described in subsection (1) of this section which are propelled by machinery, whether or not the machinery is the principal source of propulsion and to sailboats which are 12 feet or more in length."

It is clear that the registration requirement of ORS 830.770 is mandatory only for boats that are propelled by "machinery," sailboats at least 12 feet in length, and other boats in a

class that the State Marine Board has determined should be registered. The fact that the State Marine Board has not acted to require registration of inflatable rafts like defendant's does not indicate that defendant's raft is not a "boat" for purposes of ORS 830.325.

■ Defendant's second assignment of error is that, even if his raft is a boat, there is no evidence that he was operating it. To " '[o]perate' means to navigate or otherwise use a boat." ORS 830.005(8). The crux of defendant's argument is that sitting in a raft while it drifts down a river is not operating it. He contends that the state's evidence, including reasonable inferences, only demonstrated that defendant drifted down the river in his raft. The state counters that the evidence and the reasonable inferences that can be drawn from it demonstrate that defendant operated or had "actual physical control" of the raft.

We have not previously discussed the terms "operate" or "actual physical control" in the context of operation of a boat, and we need not do so in this case. The definition of "operate" is "to navigate or *otherwise use a boat.*" ORS 830.005(8) (emphasis added). Defendant assumes that to "navigate" a boat or be in "actual physical control" of it necessarily requires a purpose, *i.e.,* physically controlling a boat with the purpose of going from one place to another. Even assuming that defendant is correct that the evidence fails to show that he was successfully navigating his raft, there is no question that he was "otherwise" using the raft. "Otherwise" means "in a different way or manner" and "use" means "the act or practice of using something." *Webster's* at 1598, 2523. Consciously trying to use his raft to travel to Carver Park from a point up stream is "otherwise us[ing]" the raft. The trial court did not err in concluding that defendant operated his raft.

Affirmed.