Argued and submitted March 18, affirmed July 20, 2011

Evelyn S. ORTIZ,
*Plaintiff-Appellant,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,
an Illinois corporation,
*Defendant-Respondent.*

Linn County Circuit Court
071762; A142229

260 P3d 678

Clayton C. Patrick argued the cause and filed the briefs for appellant.

Douglas F. Foley argued the cause for respondent. With him on the brief were Vernon S. Finley, and Douglas Foley & Associates, PLLC.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Nakamoto, Judge.

WOLLHEIM, P. J.

## WOLLHEIM, J.

Plaintiff owns property including a house. Access to her property is across a bridge that she also owns. Plaintiff purchased a homeowner's insurance policy from defendant State Farm. When the bridge collapsed, plaintiff made a claim under the policy. Defendant denied the claim, and plaintiff filed this action, seeking a declaration that the policy covers the cost of replacing the bridge. The trial court concluded on defendant's motion for summary judgment that the collapse of the bridge is not covered under the policy, and plaintiff appeals. We affirm.

The parties' arguments on appeal address the proper interpretation of the insurance policy, which is a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-71, 836 P2d 703 (1992). In interpreting an insurance policy, the goal is to determine the intentions of the parties. *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 649, 147 P3d 329 (2006). The parties' intentions are determined from the terms of the policy. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999).

Thus, we begin with the policy. Section I of plaintiff's policy, entitled "Coverages," includes the following:

**"SECTION I—COVERAGES**

**"COVERAGE A—DWELLING (INCLUDING PROVISIONS POTENTIALLY RESTRICTING OR ABRIDGING THE RIGHTS OF THE INSURED)**

"1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

"Dwelling includes:

"a. structures attached to the dwelling.

"b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

"c. foundation, floor slab and footings supporting the dwelling; and

"d. wall-to-wall carpeting attached to the dwelling.

"2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

"We do not cover other structures:

"a. not permanently attached or otherwise forming a part of the realty;

"b. used in whole or in part for **business** purposes; or

"c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage."

(Boldface and uppercase in original.) Section I also describes losses not insured:

**"SECTION I—LOSSES NOT INSURED**

"1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

"a. *collapse*, except as specifically provided in **SECTION I—ADDITIONAL COVERAGES, Collapse[.]**"

(Boldface and uppercase in original; italics added.) At "SECTION I—ADDITIONAL COVERAGES," the policy lists an exception to the exclusion of collapse and provides:

"11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse *of a building or any part of a building*.

"Collapse means actually fallen down or fallen into pieces. It does not include settling, crackling, shrinking, bulging, expansion, sagging or bowing.

"The collapse must be directly and immediately caused only by one or more of the following:

"a. perils described in **SECTION I—LOSSES INSURED, COVERAGE B—PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

"b. hidden decay of a supporting or weight-bearing structural member of the building;

"c. hidden insect or vermin damage to a structural member of the building;

"d. weight or contents, equipment, animals or people;

"e. weight of ice, snow, sleet or rain which collects on a roof; or

"f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

*"Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead pier, wharf, or dock is not included under the items b., c., d., e., and f. unless the loss is the direct and immediate cause of the collapse of the building."*

(Boldface and uppercase in original; italics added.)

It is undisputed that plaintiff's bridge consisted of two logs spanning the Santiam River and was covered with decking, planks, and metal grates. The bridge collapsed under the weight of a large tow truck. The parties have assumed, for the sake of this appeal, that the bridge "collapsed" within the meaning of the policy due to one of the *causes* covered by the policy. The only dispute is whether the bridge was a "building" within the meaning of the policy and therefore falls within the policy's exception to the exclusion for "collapse."

In arguing that the collapse of a bridge is covered by the policy, plaintiff does not seriously contend that the bridge was a "dwelling," and we conclude that such an interpretation would be implausible. However, in plaintiff's view, the bridge was a "dwelling extension" within COVERAGE A because it was a "structure" on the residence premises and, further, that the collapse of the bridge falls within the policy's

exception to the exclusion for "collapse," because the bridge was a "building." In the alternative, plaintiff contends that the meaning of the term "building" as used in the policy is ambiguous and could plausibly encompass the bridge; therefore, according to plaintiff, the insurance contract must be interpreted in favor of the insured and the trial court erred in granting defendant's motion for summary judgment. Defendant, for its part, agrees that the case turns on whether the bridge is a "building" and reasons that the term, as used in the policy, unambiguously does not include a bridge.

As did the trial court, we conclude that the bridge is plausibly a "dwelling extension" within the meaning of COVERAGE A, because—depending on plaintiff's proof as to the location of the bridge—it is plausibly a "structure."[1] The exception to the collapse exclusion provides coverage for the collapse of a "building or any part of a building." Thus, coverage depends on whether the bridge is a "building or any part of a building."

The term "building" is not defined in the policy. In the absence of a policy definition, we "resort to various aids of interpretation to discern the parties' intended meaning." *Groshong*, 329 Or at 307-08. One such "aid" is the determination whether the relevant terms have a "plain meaning," determined by reference to the usual source of ordinary meaning, the dictionary. *Smith v. State Farm Insurance*, 144 Or App 442, 447, 927 P2d 111 (1996). If a term has a plain meaning because it "is susceptible to only one plausible interpretation," we will apply that meaning and conduct no further analysis. *Groshong*, 329 Or at 308. If, however, the term has more than one plausible interpretation, we will "examine the phrase in light of 'the particular context in which that term is used in the policy and the broader context of the policy as a whole.'" *Id.* at 312, (quoting *Hoffman Construction Co.*, 313 Or at 470). If a term remains ambiguous because two or more plausible interpretations continue to be reasonable, we will interpret the provision against the insurance company and in favor of coverage. *Dewsnup v. Farmers Ins. Co.*,

---

[1] We assume for the purposes of this appeal that the bridge is on the "residence premises."

349 Or 33, 40, 239 P3d 493 (2010). In all events, the interpretation of an insurance contract must be based on the four corners of the document; extrinsic evidence is not admissible to determine its meaning. *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 227 Or App 587, 206 P3d 1091 (2009), *rev allowed*, 347 Or 533 (2010).

As pertinent here, *Webster's Third New Int'l Dictionary* 292 (unabridged ed 2002) defines a "building" as

"**1** : a thing built: **a** : a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy[.]"

(Boldface in original.) The dictionary provides both a broad definition—"a thing built"—and a narrower definition—"a constructed edifice * * * usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling * * * distinguished from structures not designed for occupancy (as fences or monuments)[.]" *Cf. State v. Jenkins*, 157 Or App 156, 159, 969 P2d 1048 (1998) (citing *Webster's* definition in support of conclusion that, for purposes of offense of burglary in the first degree, a bar area within a tavern is not a separate "building").

Plaintiff contends that, in the context of the policy, the broader definition is plausibly applicable and that the bridge is covered by the policy because it is "a thing built." We conclude that, considered in the context in which the term is used, the narrower definition is more plausible. Further, when the term is viewed in the context of the policy as a whole, the narrower common meaning of "building" is the only plausible meaning.

First, as noted, the policy describes, as an exception to its "collapse" exclusion, the "direct physical loss to covered property involving the sudden entire collapse of a building or any part of a building." The policy lists certain structures

("awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead pier, wharf, or dock") for which no collapse coverage is provided, "unless the loss is the direct and immediate cause of the collapse of the building." Implicitly, the policy contemplates that the listed structures are not buildings, despite the fact that they are things "built." Thus, necessarily, the term "building" has a meaning narrower than simply a "thing built."

That conclusion is borne out by the many references to "building" throughout the policy. For example, the policy's "windstorm or hail" peril "does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust" except "when the direct force of wind or hail damages the building *causing an opening in a roof or wall* and rain, snow, sleet, sand or dust enters through this opening." (Emphasis added.) The policy's "falling object" peril does not "include loss to property contained *in a building unless the roof or an exterior wall of the building is first damaged by a falling object*." (Emphasis added.) The peril of "weight of ice, snow or sleet" applies to "damage to property *contained in a building*." (Emphasis added.) The policy covers "direct physical loss to a covered building or covered property *contained in a building* resulting from the eruption from a volcano." (Emphasis added.) It would seem from the various references to "building" that the policy contemplates the narrower common meaning of "building" and that a building is a structure that can contain things and that has walls and a roof; the disputed bridge had none of those characteristics.

Thus, we conclude that, under the unambiguous terms of the policy, the collapsed bridge was not a "building" within the meaning of the policy and that the collapse of the bridge was not a covered loss. The trial court therefore did not err in granting defendant's motion for summary judgment.

Affirmed.