658 March 27, 2024 No. 203

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Edna WILSON-HOESCH,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Office of Administrative Hearings
2022DHS16673; A180063

Submitted February 26, 2024.

Jeffrey L. Olson filed the briefs for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner seeks judicial review of a final order of the Department of Human Services Office of Training, Investigation and Safety (OTIS), in which the administrative law judge (ALJ) found that petitioner abused A, petitioner's foster child, through involuntary seclusion by locking her in a play structure. Petitioner assigns as error the ALJ's determinations that: (1) the play structure was a "room" for purposes of the statute prohibiting involuntary seclusion; (2) A was prevented from exiting the structure; and (3) A was alone in the structure. We affirm.

On September 22 and 23, 2021, a Behavior Support Specialist visited petitioner's home to provide therapy for A, who is autistic and almost entirely nonverbal. A exhibited challenging behavior on each of those two days, and because of that behavior, petitioner "took A" to a play structure "for a 'break' or 'time out'" for 15 minutes each day. The play structure—a wooden structure that was constructed with "four paneling-wood walls and a pointed roof"—is approximately five-by-five feet at its base, and approximately five feet, four inches tall at its center. The play structure was also equipped with a "hook latch to keep the door shut." The front window of the play structure had been removed, and the opening was big enough for A to climb out if she could stand on pads to use as a boost.

On September 22, after petitioner locked A in the structure, A continued to engage in challenging behavior but did not attempt to leave. On September 23, petitioner again locked A in the structure. A attempted to leave by undoing the latch, but she was unsuccessful. Petitioner had also removed the pads that A used as a boost to escape the structure.

OTIS issued a notice of abuse determination finding that an allegation of petitioner's abuse of A through involuntary seclusion in violation of ORS 418.519(7)(a) was substantiated for September 22 and September 23. Petitioner contested the finding, and, after a hearing, an ALJ for the Office of Administrative Hearings modified that order, determining that petitioner involuntarily secluded A only on September 23 and not on September 22.

In her first assignment of error, petitioner contends that the play structure cannot be considered a "room" for purposes of ORS 418.519(7)(a), because it was not a part of the house and "could be moved just like any of [A]'s other playthings." After consulting the dictionary definition and seeking guidance from context, the ALJ determined that the play structure qualifies as a room under the statute. We review the ALJ's statutory construction for errors of law. *SEIU Local 503, OPEU v. ST*, 330 Or App 310, 312, ___ P3d ___ (2024) (citing ORS 183.482(8)(a)).

ORS 418.521(1) provides that a "certified foster home * * * may not place a child in care in a restraint or involuntary seclusion as a form of discipline, punishment or retaliation * * *." ORS 418.519(7)(a) (2021) defined "involuntary seclusion" as "the confinement of a child in care alone in a *room* from which the child in care is prevented from leaving by any means." (Emphasis added).[1] On judicial review, petitioner contends that the play structure was not a "room," because it was not a part of her house; "[i]t was not attached to [her] house; [and] it was not a constituent component or division of [her] house." DHS responds that the play structure comports with the "plain-text meaning" of a "room," because it "delineated a separate, enclosed space inside petitioner's home."

We conclude that the play structure was a "room" under ORS 418.519(7)(a). The statutes do not define a "room"; thus, we presume that the legislature intended the statutory term to have its ordinary meaning and turn to the dictionary to identify that meaning. *Ortiz v. State Farm Fire and Casualty Co.*, 244 Or App 355, 360, 260 P3d 678 (2011) (looking to dictionary definitions, "the usual source of ordinary meaning," to determine whether the relevant terms have a "plain meaning"). A "room" is defined as "a part of the inside of a building, shelter, dwelling usu. set off by a partition." *Webster's Third New Int'l Dictionary* 1972 (unabridged ed 2002). Here, the play structure functioned as a room, because it was inside petitioner's home and set off by

---

[1] ORS 418.519(7)(a) has been amended since the events in this case and now provides that "'involuntary seclusion' means the confinement of a child in care alone in a room or an enclosed space from which the child in care is prevented from leaving by any means."

a partition—the structure had its own walls and ceiling—separating it from the living room space. Moreover, the statutory context supports the conclusion that "room" should not be construed as narrowly as petitioner suggests. *See, e.g.*, ORS 418.529(2)(e) (requiring DHS to "[p]rioritize the reduction or elimination of the use of restraint and involuntary seclusion"). Nothing in the dictionary definition of "room" or the statutory context supports petitioner's argument that a room must be a permanent fixture of a house. Accordingly, we conclude that the ALJ did not err.

In her second assignment of error, petitioner challenges the ALJ's finding that A was prevented from leaving the structure. We review the ALJ's findings for substantial evidence. ORS 184.482(8)(c); *Stop B2H Coalition v. Dept. of Energy*, 370 Or 792, 800, 525 P3d 864 (2023).

Petitioner contends that A was not prevented from leaving the structure, even though the door was closed, the latch was attached, and the mats had been removed. The ALJ concluded that a reasonable person could rely on the testimony of a behavior specialist to find that A attempted to leave the play structure but that petitioner prevented her from doing so by removing the mats, and that A's "minimal attempts to get out of the [play] structure show that removing the mats not only prevented her from leaving but deterred her from attempting to leave."

On judicial review, petitioner argues that the fact that the mats had been removed from the play structure does not mean that A necessarily could not exit it, and that A's unsuccessful attempt at undoing the latch "was simply [A] choosing not to continue" to try to exit the play structure. That argument, however, does not grapple with the standard of review. Uncontroverted testimony established that A attempted to leave the structure but was unable to undo the latch or to exit through the window, because the mats were removed. As such, substantial evidence supports the ALJ's determination that A was "prevented from leaving." ORS 418.519(7)(a); *Querbach v. Dept. of Human Services*, 369 Or 786, 804, 512 P3d 432 (2022) (explaining that the ALJ's "'founded' determinations are not determinations that petitioner in *fact* abused" the child in the ways that were alleged,

"but rather that DHS had 'reasonable cause to believe'" that abuse occurred (emphasis in original)).

In her third assignment of error, petitioner contends that A was not "alone" in the room, because petitioner was outside the play structure talking and singing to A. The ALJ determined that even though petitioner may have been "within sight and sound of A," A was alone, because she was the only person inside the play structure.

On judicial review, petitioner argues that because the statute does not define what it means to be "alone," the "common definition" of the word—"having no one else present"—should control. Accordingly, petitioner contends that A was not "alone" because petitioner "was always present" outside of the play structure. DHS responds that "a child is 'alone in a room' when there are no other people in the same room as the child."

ORS 418.519(7)(a), in pertinent part, provides that the child in care is involuntarily secluded if they are "alone in a room[.]" "Alone" means "separated esp. physically from all other individuals or groups." *Webster's* 60 (unabridged ed 2002). A was "alone in a room," because she was physically separated from petitioner, and no one else was *in the room* with her.

Affirmed.